UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE FOR HOME
EQUITY MORTGAGE LOAN
ASSET-BACKED TRUST SERIES
INABS 2007-A, HOME EQUITY
MORTGAGE LOAN ASSET-BACKED
CERTIFICATES SERIES INABS 2007-A,
                                                 Plaintiff,          OPINION AND ORDER

  -against-                                     22 Civ. 9319 (GWG)

STEWART TITLE INSURANCE
COMPANY,

                                                 Defendant.
---------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Deutsche Bank National Trust Company ("Deutsche Bank") brought this action for declaratory judgment and breach of contract against defendant Stewart Title Insurance Company ("STIC"). See Complaint, filed Oct. 31, 2022 (Docket # 1) ("Compl."). Deutsche Bank seeks summary judgment on its claims.[1] STIC seeks summary judgment dismissing the

---

[1] See Notice of Motion, filed June 26, 2023 (Docket # 28) ("Pl. Mot."); Statement of Undisputed Material Facts of Plaintiff Deutsche Bank, filed June 26, 2023 (Docket # 36) ("Deutsche R. 56.1 Statement"); Memorandum of Law of Plaintiff Deutsche Bank, filed June 26, 2023 (Docket # 37) ("Pl. SJ Mem."); Defendant STIC's Response and Counter-Statement, filed July 28, 2023 (Docket # 43) ("STIC R. 56.1 Response"); Declaration in Opposition to Plaintiff's Motion for Summary Judgment, filed July 28, 2023 (Docket # 44) ("Pl. SJ Sherwood Decl."); Affidavit in Support of Defendant's Motion for Summary Judgment, filed July 28, 2023 (Docket # 45) ("Pl. SJ Zeni Aff."); Defendant's Memorandum of Law in Opposition, filed July 28, 2023 (Docket # 46) ("Pl. SJ Opp."); Reply Memorandum of Law of Plaintiff Deutsche Bank, filed Aug. 11, 2023 (Docket # 47) ("Pl. SJ Reply").

complaint in its entirety.[2]  For the reasons that follow, Deutsche Bank's summary judgement motion is denied, and STIC's motion is granted.

I.  BACKGROUND

A.  Acquisition of the Two Lots by Gandley

This case concerns two lots of land associated with the street address of 23 Hemlock Drive, Mastic Beach, New York.  One lot (known as "Lot 23") contains a residence.  STIC R. 56.1 Response ¶ 2.  The other lot (known as "Lot 24") is an adjacent vacant lot.  STIC R. 56.1 Response ¶ 3.

Dennis J. Gandley acquired Lot 23 by deed dated October 7, 1999, from Robert J. Coco ("Coco Deed").  Deutsche R. 56.1 Response ¶ 9.  Less than a year later, Gandley acquired Lot 24 by deed dated June 27, 2000, from Steven and Frances Cooperman ("Cooperman Deed").  Deutsche R. 56.1 Response ¶ 7.

B.  The Mortgages and Conveyance of Lot 23

In October 2001, Gandley secured a mortgage loan with IndyMac Bank, FSB ("2001 Mortgage").  Deutsche R. 56.1 Response ¶¶ 12-13.  The text of the 2001 Mortgage included the address "23 Hemlock Drive, Mastic Beach, New York," and a "legal description" of both Lots

---

[2] See Notice of Motion, filed June 26, 2023 (Docket # 29) ("Def. Mot."); Statement of Undisputed Facts Pursuant to Local Rule 56.1, filed June 26, 2023 (Docket # 31) ("STIC R. 56.1 Statement"); Declaration in Support of Defendant's Motion for Summary Judgment, filed June 26, 2023 (Docket # 33) ("Def. SJ Sherwood Decl."); Affidavit in Support of Defendant's Motion for Summary Judgment, filed June 26, 2023 (Docket # 34) ("Def. SJ Zeni Aff."); Memorandum of Law in Support of Defendant's Motion for Summary Judgment, filed June 26, 2023 (Docket # 35) ("Def. SJ Mem."); Memorandum of Law of Plaintiff Deutsche Bank, filed July 28, 2023 (Docket # 40) ("Def. SJ Opp."); Plaintiff[']s Response to Defendant's Statement of Undisputed Facts, filed July 28, 2023 (Docket # 42) ("Deutsche R. 56.1 Response"); Defendant Stewart Title Insurance Company's Reply, filed Aug. 11, 2023 (Docket # 48) ("Def. SJ Reply").

23 and 24.³  Id.; see 2001 Mortgage, annexed as Ex. 6 to Def. SJ Zeni Aff. (Docket # 34-6), at *4.⁴  Thus, the 2001 Mortgage was recorded against both Lots 23 and 24.  STIC R. 56.1 Response ¶ 4.

On October 6, 2005, Gandley conveyed Lot 23 to L.I. Property, Inc., and recorded the conveyance the same day ("Gandley Deed").  Deutsche R. 56.1 Response ¶ 10; Gandley Deed, annexed as Ex. 7 to Def. SJ Zeni Aff. (Docket # 34-7).⁵

About a year later, in October 2006, Gandley applied for another mortgage loan from IndyMac for $210,000, which closed on December 4, 2006.  Deutsche R. 56.1 Response ¶¶ 15, 19; see 2006 Mortgage, annexed as Ex. 16 to Def. SJ Sherwood Decl. (Docket # 33-16) ("2006 Mortgage"), at *5, *22.  The proceeds from the loan were used to pay off the 2001 Mortgage.  Deutsche R. 56.1 Response ¶ 14.

In applying for the 2006 Mortgage, Gandley identified the property with the address "23 Hemlock Drive, Mastic Beach, NY 11951" and indicated that it was a "Primary Residence."  Exhibit A to Deposition of Celia Torres, annexed as Ex. 6 to Deutsche R. 56.1 Statement (Docket # 36-6), at *47 ("2006 Loan Application").  In connection with the loan, IndyMac received an appraisal dated October 23, 2006, that states that it is an appraisal of Lot 23 (only).  See Appraisal, annexed as Ex. 10 to Def. SJ Sherwood Decl. (Docket # 33-10) ("Appraisal"), at *3-4; Deutsche R. 56.1 Response ¶ 16.

---

³ A "legal description" is "[a] formal description of real property, including a description of any part subject to an easement or reservation, complete enough that a particular piece of land can be located and identified.  The description can be made by reference to a government survey, metes and bounds, or lot numbers of a recorded plat."  Legal Description, Black's Law Dictionary (10th Ed. 2014).

⁴ "*___" indicates a page number assigned by the Court's ECF system.

⁵ Gandley was apparently the principal of L.I. Property, Inc.  See Pl. SJ Mem. at 2 n.1.

On October 23, 2006, IndyMac conditionally approved Gandley's loan application, which identified the "occupancy" as a "primary residence" at "23 Hemlock Dr." Exhibit F in Deposition of Celia Torres, annexed as Ex. 6 to Deutsche R. 56.1 Statement (Docket # 36-6), at *72-75 ("Conditional Approval Notice"); see STIC R. 56.1 Response ¶ 38. In connection with the closing, tax information for Lot 23 was ordered. See Title Report, annexed as Ex. 8 to Def. SJ Zeni Aff. (Docket # 34-8) ("Title Report"), at *12-14; Deposition of Eric Zeni, annexed as Ex. 5 to Deutsche R. 56.1 Statement (Docket # 36-5) ("Zeni Dep."), at 59:20-61:23, 88:2-22; see also Deutsche R. 56.1 Response ¶ 17; STIC R. 56.1 Response ¶ 39. While the parties dispute who ordered the tax information for Lot 23, it is included in the Title Report created by Homestead Title Agency & Settlement Company ("Homestead"), one of STIC's policy-issuing agents. See Title Report at *12-14; see also STIC R. 56.1 Statement ¶ 39.

A Title Report under STIC letterhead with an effective date of October 25, 2006, appears in the record. See Title Report. The Title Report was the first time a document in connection with the 2006 Mortgage contained a legal description of Lot 24. See Title Report at *2. However, the record is devoid of evidence as to what specific communications took place between IndyMac and Homestead that resulted in the generation of the Title Report.

The Title Report on its first page identified the property by (1) referring to the Cooperman Deed (which was for Lot 24 only) and (2) providing the Section/Block/Lot number for Lot 24 only. See Title Report at *2. It also states that the "Premises described herein are known as: 23 Hemlock Drive." Id. The Title Report certified that there was "good and marketable title to the premises described in 'Schedule A[] Description'" Id. A second page is headed "Schedule A Description" and gives a description based on a "Subdivision Map Identifier" for Lot 24 only and references the "deed from Regina Wetzel," which was the deed

4

conveying Lot 24 to Gandley's grantors, the Coopermans ("Wetzel Deed"). Title Report at *3; see also Deutsche R. 56.1 Response ¶¶ 6, 26.

The 2006 Mortgage closed on December 4, 2006, with Gandley executing the mortgage in favor of Mortgage Electronic Registration Systems, Inc. See 2006 Mortgage at *5, *22; Deutsche R. 56.1 Response ¶ 19; STIC R. 56.1 Response ¶ 9; Def. SJ Mem. at 4. The 2006 Mortgage identified the property as "23 Hemlock Drive, Mastic Beach, NY . . ." and referenced a legal description in "Exhibit A." 2006 Mortgage at *7; Deutsche R. 56.1 Response ¶ 24; STIC R. 56.1 Response ¶ 7. On the following page, entitled "Schedule A," the legal description of Lot 24 is provided and a recital stating "[b]eing the same premises described in the deed to the parties of the first part herein by deed in Liber 9983p323." 2006 Mortgage at *8; Deutsche R. 56.1 Response ¶¶ 25-26; STIC R. 56.1 Response ¶ 7. This recital refers to the Wetzel Deed conveying Lot 24 to Steven and Frances Cooperman, Gandley's grantors. Deutsche R. 56.1 Response ¶ 26. The 2006 Mortgage was recorded by the Suffolk County Clerk against Lot 24 only. See 2006 Mortgage at *2.

C. The Title Insurance Policy

On December 4, 2006, STIC issued the title insurance policy at issue in this case to IndyMac, insuring title in the amount of $210,000. Deutsche R. 56.1 Response ¶ 4; STIC R. 56.1 Response ¶ 14; Pl. SJ Zeni Aff. ¶ 12; see Title Policy, annexed as Ex. 4 to Deutsche R. 56.1 Statement (Docket # 36-4) ("Policy"), at *2-19. The cover page of the Policy states that it insures against loss "sustained or incurred by reason of: 1. Title to the estate or interest described

5

in Schedule A being vested other than as stated therein." Policy at *2; see also Title Policy, annexed as Ex. 1 to Def. SJ Zeni Aff. (Docket # 34-1), at *2.[6]

The next page in the Policy to reference the property is entitled "Schedule A Description." Policy at *4. It contains a description of the insured property using (1) a "Subdivision Map Identifier" that relates only to Lot 24, (2) the Wetzel Deed, which relates only to Lot 24, and (3) the Section/Block/Lot number of Lot 24 only. Id.; STIC R. 56.1 Response ¶ 17; Def. SJ Zeni Aff. ¶ 17. The following page is headed "Schedule A." Policy at *5. For the "title to the estate" section, it states that the land is vested in Gandley by the deed Gandley took from Cooperman (for Lot 24). Id.; see also Deutsche R. 56.1 Response ¶ 7. It refers to the 2006 Mortgage made by Gandley to IndyMac dated November 15, 2006 (whose legal description describes only Lot 24). Policy at *5. It also gives the Section/Block/Lot number identifying solely Lot 24. Id. In a final line is the indicator "Property Address:" next to which is written "23 Hemlock Drive, Mastic Beach, New York 11951," id., which is the street address that Deutsche Bank asserts refers to both Lot 23 and Lot 24, see Pl. SJ Mem. at 1.

On a later page, the same "Schedule A Description" — that is, for Lot 24 only — is reproduced under another heading entitled "Schedule A Description." Policy at *7.

D.     Foreclosure Proceedings

On January 10, 2011, the 2006 Mortgage was assigned to Deutsche Bank. Deutsche R.

---

[6] The copy of the Policy proffered by Deutsche Bank reproduces as its final five pages part of the Title Report with some markings on it. See Policy at *15-19. Deutsche Bank seems to have retreated from its initial assertion, see Affidavit of Benjamin Verdooren, annexed as Ex. 1 to Deutsche R. 56.1 Statement (Docket # 36-1), ¶ 25, that these pages are part of the Policy, see Def. SJ Opp. at 12-13. While we think the evidence in the record shows that these pages are in fact part of the Policy, it is not necessary to examine these pages since their consideration would not affect the resolution of the motions.

56.1 Response ¶ 31.[7]  On August 13, 2015, Deutsche Bank initiated a foreclosure action in the Suffolk County Supreme Court.  Deutsche R. 56.1 Response ¶ 32; Summons and Complaint in Foreclosure Action, annexed as Ex. 21 in Def. SJ Sherwood Decl. (Docket # 33-21) ("Foreclosure Complaint").  The Foreclosure Complaint sought to foreclose on Lot 24. Foreclosure Complaint at *7-8, *16.  But it also sought to reform the 2006 Mortgage to include both Lots 23 and 24.  Id. at *12; Deutsche R. 56.1 Response ¶ 32.  Following the filing of a proposed order, see Proposed Order, annexed as Ex. 24 in Def. SJ Sherwood Decl. (Docket # 33-25) ("Proposed Order"), Justice John H. Rouse referred the case to a referee to compute the amount owed to Deutsche Bank but struck the portion of the Proposed Order that would have reformed the 2006 Mortgage to include Lot 23, see Order of Reference, dated January 24, 2018, annexed as Ex. 26 in Def. SJ Sherwood Decl. (Docket # 33-26) ("Order of Reference"), at 3; Deutsche R. 56.1 Response ¶ 40.

Eventually Justice Rouse issued a Judgment of Foreclosure and Sale and a Notice of Sale. See Judgment of Foreclosure and Sale, annexed as Ex. 27 in Def. SJ Sherwood Decl. (Docket # 33-27) ("Foreclosure Judgment"); Notice of Sale, annexed as Ex. 28 in Def. SJ Sherwood Decl. (Docket # 33-28) ("Notice of Sale"); Deutsche R. 56.1 Response ¶¶ 41-42.  The Notice of Sale referred to a sale of "23 Hemlock Drive," although it also specified Lot 24.  Notice of Sale at *5-6.  After the issuance of the Notice of Sale, on September 18, 2018, the court issued an Order to Show Cause in response to a request by Shannon Gandley, the surviving daughter of

---

[7] Before the assignment, in 2010, IndyMac obtained a "Mortgage Foreclosure Certificate" that showed that "Dennis Gandley is not the record owner of 23 Hemlock Drive, Mastic Beach, New York 11951" and that the 2006 Mortgage did not "encumber the property assessed as such."  See Mortgage Foreclosure Certificate, annexed as Ex. 11 to Def. SJ Zeni Aff. (Docket # 34-11), at *9; accord id. at *17.  There is no evidence that any party took steps to reform the 2006 Mortgage or the Policy at the time of this disclosure.

7

Dennis Gandley, to stay the foreclosure sale as to Lot 23.  See Order to Show Cause, annexed as Ex. 29 to Def. SJ Sherwood Decl. (Docket # 33-29); STIC R. 56.1 Response ¶¶ 29-30.  Deutsche Bank responded to the Order to Show Cause and sought reformation of the 2006 Mortgage to provide for Lot 23's inclusion.  Deutsche R. 56.1 Response ¶¶ 45-46.  On May 14, 2019, Justice Rouse issued an Amended Judgment, allowing the foreclosure sale to go forward only as to Lot 24.  See Amended Judgment, annexed as Ex. 30 in Def. SJ Sherwood Decl. (Docket # 33-30) ("Amended Judgment"); Deutsche R. 56.1 Response ¶¶ 47-48.  He specifically denied Deutsche Bank's motion to amend the complaint to foreclose on Lot 23.  See Amended Judgment at 6.

In 2021, Deutsche Bank demanded that STIC make payment under the Policy on the ground that Deutsche Bank had suffered a covered loss.  STIC R. 56.1 Response ¶ 33.  STIC refused to do so.  Id. ¶ 34.

  E. The Instant Action

On October 31, 2022, Deutsche Bank brought this action seeking to be paid under the Policy.  See Compl. ¶¶ 43, 46.  The complaint makes two claims: (1) for declaratory judgment and (2) for breach of contract.  See id. ¶¶ 8-50.  On December 15, 2022, STIC filed its answer, which included fourteen affirmative defenses.  See Answer, filed Dec. 15, 2022 (Docket # 13).  As noted, both parties have moved for summary judgment.

II. GOVERNING LAW

  A. Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986));

Celotex, 477 U.S. at 322 (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997) (citations omitted); see also Fed. R. Civ. P. 56(c)(4) (parties shall "set out facts that would be admissible in evidence").

In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed" and the court must draw "all justifiable inferences" in favor of the nonmoving party. Anderson, 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor," Anderson, 477 U.S. at 256, and "[a] party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory," Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008). "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." FDIC v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

B. Breach of Contract

A claim for payment under an insurance policy sounds in breach of contract. See, e.g., Ezrasons, Inc. v. Travelers Indem. Co., 89 F.4th 388, 394 (2d Cir. 2023) ("[U]nder New York law, an insurance policy is a contract.").[8] To recover damages for breach of contract under New York law, a plaintiff must prove "(1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of the contract, and (4) resulting damages." Eun Suk Cho v. Byung Ki Koo, 164 A.D.3d 1306, 1307 (2d Dep't 2018) (citing Palmetto Partners, L.P. v. AJW Qualified Partners, LLC, 83 A.D.3d 804, 806 (2d Dep't 2011)).

C. Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Declaratory Judgment Act is "procedural only," however, Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950), and the party invoking it must still point to a separate legal right it is seeking to vindicate, see Chevron Corp. v. Naranjo, 667 F.3d 232, 244-45 (2d Cir. 2012) (the Declaratory Judgment Act "does not extend to the declaration of rights that do not exist under law"). Here, the declaratory judgment sought by Deutsche Bank relates exclusively to its rights under the Policy. See Comp. ¶¶ 9-43. Thus, if STIC is found not to have breached the Policy, Deutsche Bank would not be entitled to a declaratory judgment. See, e.g., Obra Pia Ltd. v. Seagrape Invs. LLC, 2020 WL 5751195, at *17 (S.D.N.Y. Sept. 25, 2020) ("[W]here a plaintiff's substantive claims are dismissed, a claim for a

---

[8] "The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law." See, e.g., Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) (citation and punctuation omitted).

declaratory judgment — asserted as a separate cause of action — is properly dismissed as well."); see also Optanix, Inc. v. Alorica Inc., 2021 WL 2810060, at *4 (S.D.N.Y. July 6, 2021) (finding "a declaratory judgment would serve no purpose" where the "claim for declaratory judgment essentially replicate[d] the issues that [would] be resolved by a determination on [plaintiff]'s breach of contract claim.") (collecting cases).

III.   DISCUSSION

Under New York law, "[a]n insurance agreement is subject to principles of contract interpretation." Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 25 N.Y.3d 675, 680 (N.Y. 2015). "'As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court.'" Id. (quoting Vigilant Ins. Co. v. Bear Stearns Cos., Inc., 10 N.Y.3d 170, 177 (N.Y. 2008) (citation and punctuation omitted)). "'Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent,'" Universal Am. Corp., 25 N.Y.3d 680 (quoting Ellington v. EMI Music, Inc., 24 N.Y.3d 239 (N.Y. 2014) (citations omitted)), "or where its terms are subject to more than one reasonable interpretation," id. (citations omitted). As the Second Circuit has stated in construing New York law:

> An ambiguity exists where the terms of an insurance contract could suggest "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir. 1997) (citation and internal quotation marks omitted). Once a court concludes that an insurance provision is ambiguous, "the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." Alexander & Alexander [Servs., Inc., v. These Certain Underwriters at Lloyd's, London, England], 136 F.3d [82,] 86 [(2d Cir. 1998)]; accord Seiden Assocs. v. ANC Holdings, Inc., 959 F.2d 425, 428-29 (2d Cir. 1992). "If the extrinsic evidence does not yield a conclusive

11

answer as to the parties' intent," a court may apply other rules of contract construction, including the rule of contra proferentem, which generally provides that where an insurer drafts a policy "any ambiguity in [the] . . . policy should be resolved in favor of the insured." McCostis v. Home Ins. Co., 31 F.3d 110, 113 (2d Cir. 1994).

Morgan Stanley Group Inc. v. New Eng. Ins. Co., 225 F.3d 270, 275-76 (2d Cir. 2000). Thus, where the extrinsic evidence conclusively resolves the ambiguity, "it is not necessary to resort to the rule" of contra proferentem. Am. Com. Lines, LLC v. Water Quality Ins. Syndicate, 2018 WL 6332908, at *14 (S.D.N.Y. Nov. 7, 2018). Nonetheless, "[i]f the court concludes that an insurance policy is ambiguous, then the burden shifts to the insurer to prove that its interpretation is correct: if extrinsic evidence is available but inconclusive, the burden shifts at the trial stage." Morgan Stanley Group Inc., 225 F.3d at 276 (citing Union Ins. Soc'y v. William Gluckin & Co., 353 F.2d 946, 951-52 (2d Cir. 1965)). "[I]n the absence of extrinsic evidence, the burden shifts at the summary judgment stage." Id. (citation omitted).

Deutsche Bank argues that the Policy unambiguously covers both Lots 23 and 24 because the Policy contains a reference to "23 Hemlock Drive, Mastic Beach, New York 11951." See Pl. SJ Mem. at 12-13. Deutsche Bank asserts that this address "consists of" or "refers to" both Lots 23 and 24. See id. at 1, 5; Pl. SJ Reply at 5; Def. SJ Opp. at 1. In the alternative, it argues that if the Policy is ambiguous, extrinsic evidence shows that the parties intended to enter into an insurance policy that covered both lots. See Pl. SJ Mem. at 13-17. STIC argues that the Policy is unambiguous as to its exclusive coverage of Lot 24, see Def. SJ Mem. at 16-24, and, that if the Policy is found to be ambiguous, extrinsic evidence supports its interpretation, see id. at 29-30.

STIC makes two arguments preliminary to the question of whether the Policy should be read to cover Lot 23: (1) that Deutsche Bank's claims are precluded under the doctrine of collateral estoppel in light of the state court ruling rejecting reformation of the mortgage, see

12

Def. SJ Mem. at 22-24 and (2) that Deutsche Bank's claims are barred under the Policy's exclusions, see id. at 25-28.  It is not necessary to reach these arguments, however, since we find that the Policy cannot be read to cover Lot 23.

Deutsche Bank points to copious extrinsic evidence that IndyMac intended to issue a mortgage as to Lot 23, which leads inexorably to the inference that IndyMac purchased the Policy with the intent to insure title to the residence located on Lot 23, and not merely the vacant lot on Lot 24.  See, e.g., Pl. SJ Mem. at 13-17; Def. SJ Opp. at 13-17.  But the law requires us to ignore such evidence for purposes of determining whether the Policy is ambiguous in its coverage.  See W.W.W. Associates, Inc. v. Giancontieri, 77 N.Y.2d 157, 163 (N.Y. 1990) ("[E]xtrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face.") (punctuation and citation omitted).  With such evidence set aside, Deutsche Bank in the end points to a single line in the Policy to support its argument that the Policy covers Lot 23: namely, the appearance of "23 Hemlock Drive, Mastic Beach, New York 11951" in the "Property Address" line in Schedule A.  While Deutsche Bank contends that this address refers to both Lot 23 and Lot 24, see Pl. SJ Mem. at 1, 5, the only evidence Deutsche Bank offers in support of this contention is a witness from STIC who testified that the address could refer to "either tax lot . . . because lot 24 is vacant." Zeni Dep. at 32:17-20 (emphasis added); see Pl. SJ Mem. at 1, 5; STIC R. 56.1 Response ¶ 18.[9]  In other words, the address is not itself a definitive indicator that the subject of the Policy included Lot 23.

Even if it could be said that the address refers to both lots, the address is not presented in

---

[9] STIC contests the admissibility of this statement.  See Pl. SJ Opp. at 20-21.  It is not necessary to rule on this question, however, because Deutsche Bank cannot prevail even if the testimony is considered.

the Policy as a definitive description of the subject property. The very first description of the property appears on a page called "Schedule A Description." See Policy at *4. That page contains no substantive text other than the one-paragraph description of Lot 24. That one paragraph has several identifiers: (1) a "Subdivision Map Identifier;" (2) a reference to the "deed from Regina Wetzel;" and (3) the Section/Block/Lot number of "District 0200, Section 982.10, Block 02.00, Lot 024.00." Id. All of these identifiers refer to Lot 24. If there were no other references to the property, this description's prominent placement would unquestionably describe Lot 24 alone.

The next page is entitled "Schedule A." See Policy at *5. But it contains numerous headings that have no direct relation to a description of the property insured. For example, the page has headings for "Policy No.," "Date of Policy," "Amount of Insurance," and "Name of Insured." See id. Included in the headings are the "Block" and "Lot" number (referring to Lot 24 only) as well as the "Property Address." Id.

Thus, from the perspective of an objective reader of this document, the "Property Address" was a line to be filled in to provide an additional manner of referring to the property rather than a legal description, which had appeared on the previous page. But plaintiff makes no argument as to what address Homestead should have inserted on the "Property Address" line if Homestead sought to exclusively insure Lot 24 — as all the legal descriptions of the property indicate. Indeed, "23 Hemlock Drive, Mastic Beach, New York 11951" is the only possible candidate for the street address of Lot 24 and thus the only address that could have been put on the "Property Address" line.

A much harder case would be presented if Lot 24 was associated with some other street address and Homestead had nonetheless put "23 Hemlock Drive, Mastic Beach, New York

14

11951" on the "Property Address" line.  Here, however, Deutsche Bank concedes that "23 Hemlock Drive" did refer at least in part to Lot 24, even if it also referred to Lot 23.  See Pl. SJ Mem. at 1, 5; Pl. SJ Reply at 5; Def. SJ Opp. at 1.  Thus, the inclusion of the 23 Hemlock Drive address on the "Property Address" line is consistent with all the specific property location indicators in the document (that is, the legal descriptions), which exclusively refer to Lot 24.  These indicators include the items just mentioned — such as the Section/Block/Lot number and Subdivision Map Identifier — but also the description of the "Title to the estate . . . ." and the description of the "insured mortgage."  Policy at *5.  Both of the latter property descriptions also refer exclusively to Lot 24.

      New York case law mandates that "[p]articular words" in a contract — here, the street address — "should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby."  Riverside S. Plan. Corp. v. CRP/Extell Riverside, L.P., 13 N.Y.3d 398, 404 (N.Y. 2009) (citation and punctuation omitted).  If the street address were the only location identifier in the Policy, the Policy would be ambiguous as to precisely what it was covering.  But when the street address is read in conjunction with all the other location-identifying references, it is obvious that the intent of the document is to insure title to Lot 24, particularly since this is the only property listed under the very first property description (the "Schedule A Description"), and that the only purpose of putting a property address was to allow for the location of the property by a real world indicator.  As the Second Circuit has stated in reference to New York contract law, "where consideration of the contract as a whole will remove the ambiguity created by a particular clause, there is no ambiguity."  Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 300 (2d Cir. 1996).  So too here.  Thus, even if it could be said that the address created any ambiguity as to what property

was covered by the Policy, it is definitively resolved by the specificity of the other references to Lot 24.  See generally Petty v. Fid. Union Tr. Co., 238 A.D. 96, 100 (2d Dep't 1933) ("[A] particular description in a deed or other instrument will prevail over one general in its character. . . ."), aff'd, 262 N.Y. 690 (N.Y. 1933).

While it is not necessary to consult case law governing property descriptions in instruments such as mortgages, such case law only bolsters our conclusion.  As noted, a contract is to be interpreted in light of how it would be "viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."  Lightfoot, 110 F.3d at 906.  Case law reflects that in the case of a mortgage instrument, "when there is a discrepancy between the street address and the legal description of a piece of real property, the legal description controls."  Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp., 219 A.D.2d 186, 190 (2d Dep't 1996) (citing 1A Warren's Weed, New York Real Property, Description, §§ 11.01-11.02 (4th ed.)); accord U.S. Bank N.A. v. Jalas, 195 A.D.3d 1122, 1125 (3d Dep't 2021) ("[L]egal description in the mortgage . . . controls . . . regardless of the street address."); accord SRP 2012-5, LLC v. Corrao, 167 A.D.3d 798, 799-80 (2d Dep't 2018); Wells Fargo Bank NA v. Podeswik, 115 A.D.3d 207, 213 (4th Dep't 2014).[10]  Thus, a "reasonably intelligent person" who is "cognizant of the . . . . terminology as generally understood" in the real estate industry, Lightfoot, 110 F.3d at 906, would understand that the

---

[10] Deutsche Bank cites to Demetrio v. Stewart Title Ins. Co., 124 A.D.3d 824 (2d Dep't 2015) to counter the effect of such cases.  See Def. SJ Opp. at 14.  In Demetrio, however, the discrepancy was not between a street address and a legal description but rather between two legal descriptions.  124 A.D.3d at 826-27.  Deutsche Bank also cites to briefing by STIC in that case, see Def. SJ Opp. at 14-15, but, in the absence of a showing of judicial estoppel, the position taken by STIC in another case has no relevance to the case at hand.

same principle would apply in the context of a title insurance policy, which is itself usually tied to the issuance of a mortgage and was so tied in the instant case, see Policy at *2, *5 (referring repeatedly to the "insured mortgage").

The Court is aware of one case that dealt with this principle in the context of a title insurance policy. That case, Deutsche Bank Nat. Trust Co. v. Fadili, 2011 WL 4703707 (D.N.H. Oct. 4, 2011), which arose under New Hampshire law, involved nearly identical facts in that the disputed title insurance policy contained a street address of a residential lot and the legal description of a vacant lot. See id. at *13. The court noted that a street address is "meaningless information for title research" and that to rely on it alone "would turn the one-page legal description attached to the policy into mere surplussage, a construction practice that is judicially disfavored." Id. It thus reasoned, consistent with the principles prevailing in New York law as well, that "[w]hen construing a policy of title insurance that identifies two properties, one by legal description and the other by street address, it is not reasonable to construe the policy as applying to the property identified by the street address, in that titles are not indexed by street address in the registry of deeds." Id. Deutsche Bank makes no effort to distinguish the Fadili case or to explain why it was wrongly decided. See Pl. SJ Reply at 5.

Of course, all evidence points to the fact that IndyMac loaned money to Gandley under the assumption that it was placing a mortgage on the residence, not the vacant lot. See, e.g., Conditional Approval Notice. In the course of its briefing, Deutsche Bank makes an implicit appeal to equity by arguing that "STIC is on the hook because it created the series of events that caused Deutsche Bank's loss," Pl. SJ Reply at 4, and that Homestead "made a mistake," Pl. SJ Mem. at 6; see also id. at 7 ("failure of Homestead" led to 2006 Mortgage and Policy referring to Lot 24); Pl. SJ Reply at 7 (STIC failed to act "in good conscious [sic] and fair dealing"). But

17

these assertions do nothing to aid in determining whether the Policy is ambiguous as to its coverage. Certainly, under New York law, reformation of an insurance policy is available in cases of "mutual mistake." See, e.g., AMEX Assurance Co. v. Caripides, 316 F.3d 154, 161-62 (2d Cir. 2003). Indeed, before suit was filed, Deutsche Bank asserted to STIC that "due to a mutual mistake by the parties, . . . . [Deutsche Bank] clearly is entitled to reformation of the policy issued by STIC." Letter, annexed as Ex. 22 to Def. SJ Zeni Aff. (Docket # 34-22), at 3; accord Letter, annexed as Ex. 20 to Def. SJ Zeni Aff. (Docket # 34-20), at 2 (insurance policy should be "reformed" to provide coverage for both lots). A claim for reformation of the Policy (assuming it were timely) would have allowed the Court to examine equitable principles, which might have included an inquiry into who was at fault for starting the chain of events that caused the Policy and the 2006 Mortgage to cover only Lot 24. In this suit, however, Deutsche Bank makes no claim for reformation or any other claim in equity. Rather, the only claims sound in breach of contract. For the reasons stated above, the Policy is unambiguous as to its coverage of Lot 24 and not any other property. Thus, STIC did not breach the Policy when it refused to pay on a claim relating to Lot 23.

Conclusion

For the foregoing reasons, STIC's motion for summary judgment (Docket # 29) is granted, and Deutsche Bank's motion for summary judgment (Docket # 28) is denied. The Clerk is requested to enter judgment dismissing this case.

Dated: February 20, 2024
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge